# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GINGER R.,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　　　　　　　Defendant.[1] | Case No.: 20-cv-02524-JLS-JLB<br><br>**REPORT AND RECOMMENDATION RE:<br>(1) PLAINTIFF'S MERITS BRIEF; AND (2) DEFENDANT'S OPPOSITION TO PLAINTIFF'S MERITS BRIEF**<br><br>**[ECF Nos. 17; 18]** |

　　　This Report and Recommendation is submitted to the Honorable Janis L. Sammartino, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

　　　On December 30, 2020, Plaintiff Ginger R. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final administrative decision by the

---

[1]　Kilolo Kijakazi is hereby substituted as the defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

20-cv-02524-JLS-JLB

Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). (ECF No. 1.)

Now pending before the Court and ready for decision is Plaintiff's merits brief in support of her appeal. (ECF No. 17.) The Commissioner filed a cross-motion for summary judgment and opposition to Plaintiff's merits brief (ECF No. 18),[2] and Plaintiff filed a reply (ECF No. 19). For the reasons set forth herein, the Court recommends that Plaintiff's merits brief be **DENIED**, that the Commissioner's cross-motion for summary judgment be **GRANTED**, and that judgment be entered affirming the Commissioner's decision.

## I.    PROCEDURAL BACKGROUND

On February 19, 2018, Plaintiff filed an application for SSI under Title XVI of the Social Security Act. (AR[3] 179–91.) On February 20, 2018, Plaintiff also filed an application for a period of disability and DIB under Title II of the Social Security Act. (AR 192–96.) In both applications, Plaintiff alleged disability beginning March 1, 2017. (AR 179–191, 192–196.) After her applications were denied initially and upon reconsideration (AR 120–24, 127–32), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 133–34.) An administrative hearing was held on June 5, 2020. (AR 34–48.) Plaintiff appeared at the hearing with counsel, and testimony was taken from her, as well as from a vocational expert ("VE"). (*See* AR 34–48.)

As reflected in his June 29, 2020, hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from March 1, 2017, through the date of decision. (AR 12–33.) The ALJ's decision became the final decision

---

[2]    The Court notes that the Commissioner was to file only an opposition to Plaintiff's merits brief. CivLR 7.1(e)(6)(e). No other motions were required to be filed for the Court to dispose of the case on its merits. *Id.*

[3]    "AR" refers to the Certified Administrative Record filed on July 2, 2021. (ECF No. 10.)

of the Commissioner on October 29, 2020, when the Appeals Council denied Plaintiff's request for review. (AR 1–6.) This timely civil action followed. (*See* ECF No. 1.)

## II.   SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2017, the alleged onset date. (AR 17.)

At step two, the ALJ found that Plaintiff had the following severe impairments: partial onset of generalized seizures, headaches, depression/bipolar and anxiety disorder, and neurocognitive disorder. (AR 17–18.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 18–20.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform light work (lifting and carrying 20 pounds occasionally and ten pounds frequently; sitting six hours out of eight; and standing/walking for six hours out of eight" with the following limitations:

> She should never climb ropes, ladders or scaffolds; she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; she should avoid concentrated exposure to temperature extremes and loud noise; she should avoid all exposure to unprotected heights and moving and dangerous machinery; [she] is able to understand, remember, and carry out simple instructions and tasks; she can respond appropriately to supervisors and co-workers in a task-oriented setting where contact with others is casual and brief; she can perform work at a normal pace without production quotas; and she should not work in a setting that includes constant/regular contact with the general public or more than infrequent handling of customer complaints.

(AR 20.)

For purposes of his step four determination, the ALJ determined that Plaintiff had no past relevant work. (AR 25.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on

the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, garment bagger, garment sorter), the ALJ found that Plaintiff was not disabled under the law from March 1, 2017, through the date of decision. (AR 25–26.)

### III. PLAINTIFF'S CLAIM OF ERROR

As reflected in Plaintiff's merit's brief, the disputed issue that Plaintiff is raising as the ground for reversal and/or remand is as follows: whether the ALJ's RFC determination is unsupported by substantial evidence in the record because the ALJ "failed to develop the record by obtaining a non-stale medical opinion regarding Plaintiff's remaining ability to perform work-like functions." (*See* ECF No. 17 at 15–20.)

### IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575–76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529–30 (9th Cir. 1986). Where evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence. *Id.*

### V. DISCUSSION

#### A. Legal Standard

An ALJ's RFC determination "must set out all the limitations and restrictions of the particular claimant." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir.

2009). An ALJ will assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The claimant "is ultimately responsible for providing the evidence to be used in making the RFC finding," but an ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citations omitted). The court must defer to the ALJ's RFC determination "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

### B.     The ALJ's Decision

To determine Plaintiff's RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and [Social Security Ruling ("SSR")[4]] 16-3p." (AR 20.) Additionally, the ALJ also considered Plaintiff's response to treatment and "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 [C.F.R. §§] 404.1520c and 416.920c." (AR 20.)

####     1.     Objective Medical Evidence
#####          a.     *2017 Medical Records*

Medical records dated February 7, 2017, indicate that Plaintiff had a history of subependymal gray matter heterotopia partial onset with secondary generalization seizures. (AR 21, 376.) From March 2, 2017 to March 10, 2017, Plaintiff was hospitalized after experiencing three seizures at a routine doctor's visit. (AR 21, 401.) At a follow-up

---

[4]     SSRs are binding on all components of the Social Security Administration. *See* 20 C.F.R. § 402.35(b)(1). "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, [courts] give them some deference." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, the Court will not defer to SSRs "if they are inconsistent with the statute or regulations." *Id.*

medical appointment, Plaintiff noted that when she was discharged from the hospital in March 2017, she "had been put on Seroquel and did not experience the symptoms while on the medication." (AR 22, 432–34.) When Plaintiff was on Seroquel, "she was very calm and happy and felt like herself." (AR 22, 432.) On April 25, 2017, Plaintiff presented to Pioneers Memorial Hospital and reported that she "had a problem with memory and had a history of mood/behavior disorder." (AR 21, 373.) During this visit, Plaintiff was given a physical and neurological examination, both of which were normal. (AR 21, 373.) Medical records from UC San Diego Health dated October 5, 2017, show that Plaintiff stopped taking Seroquel in May 2017. (AR 22, 432.) Plaintiff developed symptoms of irritability and aggression when she stopped taking Seroquel. (AR 22, 432.) At her visit on October 5, 2017, resident physician Andrew Hannawi advised Plaintiff to restart Seroquel. (AR 434.) On December 4, 2017, Plaintiff presented to Pioneers Memorial Hospital for treatment of a headache. (AR 22, 520–23.) "A physical examination of [Plaintiff] revealed normal results and [Plaintiff] was given a short-course of her medications, released the same day, and instructed to follow up with her physician." (AR 22, 520–23.)

                b.    *2018 Medical Records*

On January 15, 2018, Plaintiff presented to Pioneers Memorial Hospital and alleged that she experienced a seizure. (AR 22, 505–06.) After undergoing a chest x-ray, an EKG, and lab testing, Plaintiff "was discharged the same day in stable condition and was noted to be ambulatory." (AR 22, 505–06.) On April 28, 2018, Plaintiff presented for a consultative examination regarding her mental functioning, performed by Jerry R. Livesay, Ph.D. (AR 19, 22–24 691–96.) At this visit, Dr. Livesay described Plaintiff as "pleasant, cooperative, and with good eye contact." (AR 23, 693.) Dr. Livesay diagnosed Plaintiff with depressive disorder and mild neurocognitive disorder. (AR 23, 695.)

Medical records from June 2018 indicate that Plaintiff saw a psychiatrist, Ng Bernardo, M.D., at the request of her general practitioner. (AR 23, 964–66.) Dr. Bernardo

diagnosed Plaintiff with a mood disorder and instructed her to continue taking her medication and to follow-up with her primary care physician. (AR 23, 964–66.)

### c. *2019 Medical Records*

From March 11, 2019 to March 14, 2019, Plaintiff underwent inpatient continuous EEG monitoring—a test that monitors the electric sensitivity of the brain. (AR 23, 886–89.) The report that followed indicates that "the EEG monitoring was consistent with evidence to support a diagnosis of focal onset epilepsy." (AR 23, 886–89.) On July 12, 2019, Plaintiff reported to Mary Kay Klockmann, FNP, of the Imperial Valley Family Care Medical Group, that she experienced a seizure two days prior and was taken to the emergency room. (AR 23, 946.) After being observed for several hours during which she was seizure-free, Plaintiff was discharged. (AR 23, 946.) On December 9, 2019, Plaintiff reported to Mary Kay Klockmann, FNP, that she experienced a seizure in October and had not had any since then. (AR 23, 941.)

### d. *2020 Medical Records*

On January 22, 2020, Plaintiff reported to Mary Kay Klockmann, FNP, that she stopped taking Keppra earlier that month. (AR 23, 937.) Plaintiff resumed her use of Keppra, and on February 28, 2020, Plaintiff informed Mary Kay Klockmann, FNP, that she had been seizure-free since restarting Keppra. (AR 23, 935.)

The ALJ noted that Plaintiff underwent limited mental-health-specific care in 2019 and 2020. (AR 24.) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms "were not entirely consistent with the medical evidence and other evidence in the record." (AR 21.) The ALJ summarized Plaintiff's statements as follows:

> [Plaintiff] alleged that she began experiencing seizures in 2016 and notes that she had been prescribed seizure medications. She also noted that she experienced migraines. She noted that her driver's license had been suspended due to seizures. There was an order of suspension/revocation of [Plaintiff]'s license in the record. She has reported that she experienced a

mental disorder, "body shakes," and balance problems. She alleged frequent falls and partial onset seizures. The records contained various written submissions from family and friends of [Plaintiff] describing their understanding and/or observations of [Plaintiff]'s impairments, restrictions, and functioning. [Plaintiff] testified that she had experienced one seizure in 2020 and that she experienced headaches that lasted an hour to an hour and a half.

(AR 21.)

The ALJ found several instances throughout the disability period in which Plaintiff's allegations of disability were not entirely consistent with the objective medical evidence. For example, in March 2017, Plaintiff noted that she did not experience the alleged symptoms while on Seroquel, her prescribed medication. (AR 22, 32–34.) Plaintiff told Dr. Hannawi that while she was on Seroquel, she was "calm, happy, and felt like herself." (AR 434.) Similarly, a physical and neurological examination in April 2018 "revealed normal results." (AR 22, 520–23.)

### 2. Opinion Evidence

The ALJ also found Plaintiff's allegations of disability inconsistent with the medical opinions of a consultative examiner, state agency psychological consultants, and state agency medical consultants. As mentioned above, Dr. Livesay performed a consultative examination on Plaintiff regarding her mental functioning on April 28, 2018. (AR 19, 22–24, 691–96.) Dr. Livesay provided the following medical source statement:

> [Plaintiff]'s ability to perform simple and repetitive tasks was unimpaired. [Plaintiff]'s ability to perform detailed and complex tasks was mildly impaired. [Plaintiff]'s ability to accept instructions from supervisors was unimpaired. [Plaintiff]'s ability to interact with coworkers and the public was unimpaired. [Plaintiff]'s ability to perform work activities on a consistent basis without special or additional instruction was mildly impaired. [Plaintiff]'s ability to maintain regular attendance and complete a normal workday/workweek without interruptions from a psychiatric condition was mildly impaired. [Plaintiff]'s ability to deal with usual stress encountered in the workplace was mildly impaired.

(AR 24, 695.)

Although the ALJ found Dr. Livesay's opinion only "partially persuasive," he noted that it was supported by a personal evaluation and Plaintiff's mental status examination results. (AR 24.) Moreover, Dr. Livesay's opinion "was consistent with [Plaintiff]'s limited mental health treatment which involved prescription treatment with Seroquel and limited mental health specific treatment." (AR 24.)

State agency psychological consultants, Elizabeth Covey, Psy.D, and Scott F. Kaper, Ph.D, determined on initial review and reconsideration that Plaintiff "appeared capable of understanding, remembering and carrying out short and simple instructions; she was limited to occasional general public contact; and she was capable of adapting appropriately." (AR 24, 49–79, 82–112.) Both psychological consultants opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone. (AR 57, 73, 90, 106.) The ALJ found the opinions of the state agency psychological consultants only "partially persuasive" such that the ALJ found a more restrictive RFC to be appropriate; however, the opinions were consistent with Plaintiff's limited mental health treatment and her positive response to prescription treatment. (AR 24.) Further, the opinions "were supported with a detailed narrative explanation with specific cites to the record up to the time of their evaluations." (AR 24.)

State agency medical consultants, Fulvio Franyutti, M.D., and Yvonne Post, D.O., determined on initial review and reconsideration that Plaintiff could work at the light exertional level with the following additional restrictions: "Never climbing ladders, ropes, or scaffolds and occasionally performing all other postural activities. Avoid concentrated exposure to extreme heat and extreme cold and avoid all exposure to hazards." (AR 24.) The ALJ concluded that the opinions of the state agency medical consultants were "persuasive" because (1) they were supported with a detailed narrative explanation with specific citations to the record; and (2) they were consistent with Plaintiff's history of a partial onset of generalized seizures which were controlled on medication. (AR 24, 49–79, 82–112.)

Finally, the ALJ afforded the third-party statements from Plaintiff's friends and family members "minimal weight because they were in conflict with the medical evidence of record which generally demonstrated that all of [Plaintiff]'s severe impairments appeared to be medically managed to the extent that they did not preclude all employment." (AR 25.)

### C. The Parties' Arguments

As stated above, the sole issue in dispute in this case is whether the ALJ's RFC determination is supported by substantial evidence. (ECF No. 17 at 15–20.) In support of her argument, Plaintiff proffers two related assertions. First, Plaintiff asserts the ALJ failed to develop the record by neglecting to obtain further opinion evidence before formulating Plaintiff's RFC. (ECF No. 17 at 16.) Plaintiff notes that there was no "treating source opinion obtained for the record" and that "the only opinion evidence available was from state-requested non-examine sources or one-time consultative examiners." (*Id.*) Plaintiff contends that the ALJ erred by failing to obtain an opinion from a treating source, and that, therefore, his RFC determination lacks substantial evidence because it is "based solely on opinions derived from limited to no interaction with [Plaintiff]. . . ." (*Id.*)

Second, Plaintiff argues the ALJ erroneously relied on stale opinions to determine Plaintiff's RFC. (ECF No. 17 at 17–19.) She notes that the non-examining state agency physicians authored their opinions in May and August 2018, approximately two years before the date of the ALJ's decision. (ECF No. 17 at 18.) Plaintiff suggests the record is inadequate because the only medical opinions available pre-dated other medical evidence, such as Plaintiff's "July 2019 admission to the emergency department after a thirty-minute seizure, or her mental health treatment at Imperial County Behavioral Health." (*Id.*) Thus, Plaintiff argues that the ALJ should have solicited a more recent medical source opinion because "the state agency consultants' determinations were clearly stale," which left the ALJ "to interpret the raw medical data into functional limitations" as a layperson. (*Id.* at 18–19.)

///

In its opposition to Plaintiff's motion, Defendant argues that the ALJ's RFC determination is supported by substantial evidence, including the objective medical evidence, Plaintiff's treatment history, and the opinion evidence. (ECF No. 18 at 6.) Specifically, Defendant argues that "Plaintiff, not the ALJ, bore the burden of requesting an opinion from Plaintiff's treating physician if she believed it would support her DIB and SSI applications." (*Id.* at 9.) Moreover, Defendant refutes Plaintiff's position that the non-examining state agency physicians' opinions were "stale." (*Id.*) Defendant argues that none of their opinions were stale because each of the state agency physicians "evaluated Plaintiff's capabilities during the alleged disability period." (*Id.*)

**D.   Analysis**

    1.   <u>Duty to Develop the Record</u>

The ALJ must consider all relevant records in its analysis because the RFC must be "based on *all* the relevant evidence in [the Plaintiff's] case record." 20 C.F.R. §§ 404.1545, 416.945(a)(1) (emphasis added). The objective medical evidence of record coupled with the opinions of the non-examining state agency consulting physicians constitute substantial evidence supporting the ALJ's RFC determination. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Because the ALJ found their opinions to be "supported with a detailed narrative explanation with specific citations to the record" and "consistent with [Plaintiff's] history of a partial onset of generalized seizures," the ALJ met this standard. (AR 24–25.)

However, Plaintiff argues "[t]he ALJ failed to discharge his duty to develop the record by obtaining an opinion from treating physician Dr. [Sayed] Monis, [M.D.], ordering a new consultative examination, or at least obtaining an updated state agency consultant opinion that would interpret the medical data from 2019 and 2020." (ECF No. 17 at 20.)

///

The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014). However, it remains the claimant's duty to prove that she is disabled. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled."). An ALJ's duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Id.* Contrary to Plaintiff's position that the record is necessarily inadequate because Plaintiff sought additional medical care after the medical opinions were rendered, "[t]he mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record." *Stivers v. Saul*, No. 19-cv-01110-BAM, 2021 U.S. Dist. LEXIS 61358, at *26 (E.D. Cal. Mar. 30, 2021). The Administrative Record is over 1,000 pages and includes Plaintiff's complete medical treatment records from various providers and medical facilities between 2017 and 2020. At the hearing, Plaintiff's counsel stated that the record was complete and that he was "comfortable saying the record [could] be closed." (AR 39.) The ALJ was not obligated to further develop the record where Plaintiff's counsel affirmatively stated that the record was complete. *See Stivers*, 2021 U.S. Dist. LEXIS 61358, at *26; *see also Findley v. Saul*, No. 18-cv-00341-BAM, 2019 U.S. Dist. LEXIS 147761, at *19 (E.D. Cal. Aug. 29, 2019) (rejecting argument that the ALJ erred by failing to obtain additional medical opinions in response to new medical evidence and finding the record was not ambiguous or inadequate where the plaintiff's attorney stated the record was complete). In sum, the ALJ did not err by failing to obtain additional medical source opinions.

    2.    <u>Stale Medical Opinions</u>

Although "there may be no outright prohibition on an ALJ relying on outdated medical opinions, the Ninth Circuit has at times looked with skepticism on an ALJ's reliance on stale medical opinions that do not reflect subsequent deterioration of a claimant's condition." *Brand v. Kijakazi*, No. 20-cv-02219-NJK, 2021 WL 5868131, at *3

(D. Nev. Dec. 10, 2021) (citing *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (finding an ALJ erred in relying on opinions that did not account for a later evaluation showing the claimant's foot condition was progressively deteriorating); *Leslie v. Astrue*, 318 Fed. App'x. 591, 592 (9th Cir. 2009) (holding that an ALJ erred in relying on opinions that did not account for a more recent suicide attempt)).

Here, Plaintiff asserts that the state agency physicians' opinions were stale because they were authored "*two years* prior to the ALJ's June 2020 decision." (ECF No. 17 at 18.) (emphasis in original). However, the age of a medical opinion alone does not render it stale. *See David P. v. Saul*, No. 19-cv-01506-BEN-AHG, 2020 WL 4593311, at *1 (S.D. Cal. Aug. 11, 2020) (adopting report and recommendation that held a two-year-old medical opinion was not stale), vacated and remanded on other grounds sub nom., *Politte v. Kijakazi*, No. 21-55341, 2021 WL 5860767 (9th Cir. Aug. 10, 2021). Plaintiff also argues that the opinions were stale because the records relied on by the state agency consultants in their opinions did not include subsequent medical evidence. (ECF No. 17 at 18.) However, to render an opinion stale, "subsequent evidence must be contradictory—or at least inconsistent—with the earlier opinion in some material manner." *Brand*, 2021 WL 5868131, at *3; *see also Digiacomo v. Saul*, No. 19-cv-00494-BAM, 2020 WL 6318207, at *8 (E.D. Cal. Oct. 28, 2020) (finding no error when the plaintiff had not identified subsequent records that were "materially inconsistent" with the opinions relied upon). Furthermore, "courts have made clear that the claimant must show that the subsequent evidence 'would have likely changed the State Agency assessments or the ALJ's decision.'" *Brand*, 2021 WL 5868131, at *4. (citing *Rudy P.A. v. Kijakazi*, No. CV-20-00986-RAO, 2021 WL 3568204, at *4 (C.D. Cal. Aug. 12, 2021)). The Court does not find the subsequent medical records relied on by Plaintiff "materially inconsistent" with her history of a partial onset of generalized seizures, either in kind or in meaningful degree. *Digiacomo*, 2020 WL 6318207, at *8. Therefore, the Court finds that the ALJ did not err by relying on the state agency physicians' medical opinions that did not account for Plaintiff's subsequent medical evidence.

Plaintiff cites three cases for the proposition that "the opinions the ALJ relied upon were stale." (ECF No. 17 at 17–18, citing *Rodriguez-Curtis v. Astrue*, No. CV-10-02794-VBK, 2011 WL 536598 (C.D. Cal. Feb. 15, 2011); *Arriaga v. Berryhill,* No. CV-16-0755-TUC-LCK, 2018 WL 1466234 (D. Ariz. Mar. 26, 2018); *Huerta v. Astrue*, No. 13-CV-01210-WHO, 2014 WL 1866427 (N.D. Cal. May 8, 2014)). The Court finds these cases inapposite.

First, Plaintiff cites *Rodriguez-Curtis* to argue that "[i]f an opinion is stale, the ALJ should obtain a medical opinion that could interpret Plaintiff's most recent raw medical data into functional limitations." (ECF No. 17 at 17.) In *Rodriguez-Curtis*, the ALJ discounted a treating physician's opinion because it was over four years old. *Rodriguez-Curtis*, 2011 WL 536598, at *3. On review, the district court held that this was not a specific and legitimate reason to reject the opinion, explaining that the ALJ should have developed the record by ordering another consultative examination *if* he felt the opinion was stale, rather than rejecting it due to its age. *Id.* Here, Plaintiff uses the fact that the state agency physicians authored their opinions two years prior to the ALJ's decision to conclude that the opinions were stale. (ECF No. 17 at 17–18.) *Rodriguez-Curtis* does not support this proposition. *Rodriguez-Curtis* does not hold that a four-year-old opinion (much less a two-year-old opinion) is stale, but rather that an ALJ should not reject an opinion for staleness that is not inconsistent with later medical evidence in the record, and certainly not without further developing the record by ordering another consultative exam.

Second, Plaintiff relies on *Arriaga* for the proposition that remand is warranted "where the ALJ bases a claimant's RFC entirely on the stale opinions of non-examining physicians." (ECF No. 17 at 17.) The Court finds *Arriaga* distinguishable. There, the district court held that the ALJ erred by rejecting the opinions of the treating physician without a germane reason, for failing to give any reason for rejecting the opinion of the examining psychologist, and for discounting the plaintiff's credibility without clear and convincing reasons. *Arriaga*, 2018 WL 1466234, at *6. As a result of these errors, the court ruled that the case should be remanded. However, the *Arriaga* court explicitly stated

that its ruling did not address whether the ALJ erred by not further developing the record and obtaining the testimony of a vocational expert. *See id*. The court explained, "Because the Court is remanding the matter for further development, it need not rule on Arriaga's claim that the ALJ erred in not further developing the record and obtaining the testimony of a vocational expert." *Id*. Indeed, the *Arriaga* court's criticism of the ALJ's use of "stale opinions of non-examining physicians" is stated in the context of the ALJ rejecting the opinion of the psychiatric nurse practitioner who examined the plaintiff more recently and where the claimant's symptoms had become significantly more severe in the intervening time period. *Id*.

Third, Plaintiff relies on *Huerta* for the same proposition for which she cited *Arriaga*—that an ALJ may not rely exclusively on a "stale" opinion of a non-examining physician to reach an RFC determination. (ECF No. 17 at 18.) *Huerta* is also distinguishable. Again, unlike the present case, *Huerta* considered whether an ALJ errs by relying on an earlier non-examining consultant's opinion to rebut the conclusions in a treating physician's more recent report. *See Huerta*, 2014 WL 1866427, at *15. Here, the ALJ did not rely on more dated opinions of consultative examiners to rebut a treating physician's opinion to the contrary. Instead, there is no opinion to the contrary in the record in this case.

Indeed, none of the three cases cited above by Plaintiff supports her assertion that "courts will remand where the ALJ bases a claimant's RFC entirely on the stale opinions of non-examining physicians." (ECF No. 17 at 17.) Because *Arriaga* and *Huerta* specifically concern the ALJ's reliance on older consultative examiners' opinions compared to more recent opinions of treating sources, Plaintiff's reliance on these cases is misplaced. Here, the opinions of the non-examining consultants are not rebutted by any other opinion, let alone that of a treating source.

Regarding Plaintiff's assertion that because the ALJ relied on stale opinion evidence he "was left with no updated medical opinion to interpret raw medical data into functional limitations" (ECF No. 17 at 18–19), the Court finds that the ALJ did not err in evaluating

medical evidence without the benefit of new medical opinions interpreting it. Some courts have determined that "an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'" *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (citation omitted) (stating that the ALJ, "who [was] not a qualified medical expert, should not have gone outside the record to the medical textbooks for the purpose of making his own exploration and assessment as to claimant's medical condition"). However, the Court is unaware of any case where the Ninth Circuit has conclusively held that an ALJ may not use or interpret the medical record in a disability determination. "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine the [RFC]." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ must base their RFC finding "on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). Accordingly, it was well within the ALJ's purview to evaluate medical evidence without a treating source opinion interpreting it. *See Karen E. v. Berryhill*, No. ED CV 17-918-SP, 2019 WL 1405835, at *3 (C.D. Cal. Mar. 27, 2019) ("Certainly it may have been helpful for the ALJ to retain a medical expert to review these records, but it was not necessarily required where, as here, the ALJ reviewed the substantial medical evidence that supported his RFC determination with respect to plaintiff's lower back pain.").

In sum, the ALJ did not err by failing to obtain further opinion evidence from a treating source before formulating Plaintiff's RFC. The ALJ correctly based his RFC determination on substantial evidence in the record including the objective medical evidence, Plaintiff's treatment history, and the opinion evidence. In addition, the Court does not find the opinions relied on by the ALJ to be stale. Thus, the Court concludes that the ALJ did not commit reversible error.

## VI.     CONCLUSION AND RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that Plaintiff's merits brief be **DENIED**, that the Commissioner's cross-motion for summary judgment be **GRANTED**, and that judgment be entered affirming the Commissioner's decision.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation shall be filed with the Court and served on all parties **no later than <u>July 27, 2022</u>**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than <u>August 8, 2022</u>**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 445 (9th Cir 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir 1991).

**IT IS SO ORDERED.**

Dated:  July 13, 2022

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge